# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| VICTOR MENENDEZ § <br> *Plaintiff,* § <br> § <br> v. § <br> § <br> HUNTER DOUGLAS, INC., UNITED § <br> STATES PATENT AND TRADEMARK § <br> OFFICE, and, DREW HIRSHFIELD, § <br> Commissioner for Patents of United States § <br> Patent and Trademark Office, § <br> *Defendants.* § | Civil Action No. 4:21-cv-451 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Hunter Douglas, Inc.'s Motion to Dismiss (Dkt. #16). Having considered the motion and relevant pleadings, the Court finds the motion should be **GRANTED in part and DENIED in part.**

### BACKGROUND

For about 25 years, Plaintiff Victor Menendez ("Menendez") has been involved in the "indoor/outdoor blinds, lighting, and related accessories industry" (Dkt. #5 ¶ 11). Defendant Hunter Douglas, Inc. ("Hunter Douglas") manufactures window coverings (Dkt. #16 at p. 2).

In 2013, Menendez invented the Hem Bar for Use with Architectural Structure Covering (the "Hem Bar") (Dkt. #5 ¶ 15). The Hem Bar is the bottom edge of a roller shade or other type of window covering, and includes a weather strip and access for weight bearing instruments (Dkt. #5 ¶ 12).

In 2017, Menendez sold certain asserts to Timberlinds, LLC ("Timberlinds"), a subsidiary of Hunter Douglas, through an Asset Purchase Agreement (Dkt. #5 ¶ 13). After the sale, Menendez worked as a Timberlinds employee (Dkt. #5 ¶ 13). An employment agreement governs the terms

1

of Menendez's employment with Timberlinds and Hunter Douglas (the "Employment Agreement") (Dkt. #5 ¶ 13).

On June 18, 2018, Menendez signed and executed an assignment of his rights in the Hem Bar to Hunter Douglas ("First Assignment") (Dkt. #5, Exhibit 2). On June 22, 2018, Hunter Douglas recorded the First Assignment with the USPTO (Dkt. #6 ¶ 22). On April 10, 2019, Hunter Douglas filed an application with the United States Patent and Trademark Office (the "USPTO") for a patent of the Hem Bar (the "Application") (Dkt. #5 ¶ 15). The Application states that Menendez invented the Hem Bar but assigned the patent rights to Hunter Douglas (Dkt. #5 ¶ 16). Menendez asserts the Application is a fraud because Menendez's purported signature on the First Assignment is a forgery (Dkt. #5 ¶ 17). Hunter Douglas recorded the First Assignment with the USPTO on June 22, 2018 (Dkt. #5, Exhibit 2).

On June 15, 2021, Menendez brought suit, seeking declaratory, injunctive, and mandamus relief (Dkt. #1). On July 23, 2021, Menendez filed his Amended Complaint, in which he asserted additional claims for conversion and violation of Section 12.002 of the Texas Civil Practice and Remedies Code (Dkt. #5).

After Menendez filed his Amended Complaint, Hunter Douglas assigned the Application to Menendez on September 21, 2021 ("Second Assignment") (Dkt. #16, Exhibit #15). By September 21, 2021, the USPTO had twice-rejected the Application (Dkt. #16, Exhibit #15).[1] The USPTO has also issued notice that the Application will "expire upon Hunter Douglas' abandonment of remedies commonly available to revive the application" (Dkt. #5 ¶ 19).

---

[1] Neither side has provided the Court with the dates the USPTO rejected the application. However, both sides acknowledge the rejections occurred before the Second Assignment.

On September 24, 2021, Hunter Douglas moved to dismiss Menendez's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Dkt. #16). Menendez responded on October 8, 2021 (Dkt. #19). Hunter Douglas replied on October 15, 2021 (Dkt. #22).

Also on September 24, 2021, Hunter Douglas filed a separate action against Menendez in this Court, alleging state law claims. *Hunter Douglas Inc., v. Menendez,* Case No. 4:21-cv-00741.

## LEGAL STANDARD

**Federal Rule of Civil Procedure 12(b)(1)**

Under Rule 12(b)(1), "a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (internal quotation marks omitted). There are two types of Rule 12(b)(1) challenges to subject-matter jurisdiction: facial attacks and factual attacks. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

A facial attack challenges whether the plaintiff has sufficiently alleged a basis for subject matter jurisdiction. *Menchaca v. Chrysler Credit* Corp, 613 F.2d 507, 511 (5th Cir. 1980). The pleading's allegations are presumed to be true, and "[i]f those allegations sufficiently allege a claim for recovery, the complaint stands and the federal court must entertain the suit." *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 286 (N.D. Tex. 2012) (citing *Paterson*, 644 F.2d at 523).

"A factual attack on the subject matter jurisdiction of the court, however, challenges the facts on which jurisdiction depends and matters outside of the pleadings, such as affidavits and testimony, are considered." *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981). Accordingly, the presumption of truthfulness does not attach to the plaintiff's allegations in the case of a factual attack. *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). To prevail, "the plaintiff must 'prove the existence of subject-matter jurisdiction by a preponderance of the evidence.'"

*Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989) (citing *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986)).

A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not prevent the plaintiff from pursuing the claim in another forum. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

**Federal Rule of Civil Procedure 12(b)(6)**

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

*Federal Rule of Civil Procedure 9(b)*

Rule 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

Rule 9(b)'s particularity requirement generally means that the pleader must set forth the "who, what, when, where, and how" of the fraud alleged. *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005). A plaintiff pleading fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd.*

*v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002). The goals of Rule 9(b) are to "provide[] defendants with fair notice of the plaintiffs' claims, protect[] defendants from harm to their reputation and goodwill, reduce[] the number of strike suits, and prevent[] plaintiffs from filing baseless claims." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) (citing *Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994)). Courts are to read Rule 9(b)'s heightened pleading requirement in conjunction with Rule 8(a)'s insistence on simple, concise, and direct allegations. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). However, this requirement "does not 'reflect a subscription to fact pleading.'" *Grubbs*, 565 F.3d at 186.

Failure to comply with Rule 9(b)'s requirements authorizes the Court to dismiss the pleadings as it would for failure to state a claim under Rule 12(b)(6). *United States ex rel. Williams v. McKesson Corp.*, No. 3:12-CV-0371-B, 2014 WL 3353247, at *3 (N.D. Tex. July 9, 2014) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

**ANALYSIS**

Hunter Douglas contends the Second Assignment renders Menendez's claims for declaratory, injunctive, and mandamus relief moot (Dkt. 16 at p. 12). Hunter Douglas further contends Menendez's conversion and Section 12.002 claims are moot under the terms of the Employment Agreement (Dkt. #16 at p. 13). Finally, Hunter Douglas asserts Menendez's claims should be dismissed pursuant to Rule 12(b)(6) (Dkt. #16 at pp. 18–22). Menendez responds that his claims are not moot, and that his claims are well-pleaded, thus the Court should deny Hunter Douglas's motions (Dkt. #19).

**I.      Lack of Subject Matter Jurisdiction**

Hunter Douglas asserts Menendez's claims for declaratory, injunctive, and mandamus relief are moot due to the Second Assignment (Dkt. 16 at p. 12). Under the doctrine of mootness,

"[a] controversy becomes moot where, as a result of intervening circumstances, there are no longer adverse parties with sufficient legal interests to maintain the litigation." *Chevron U.S.A., Inc., v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993) (citing *Mills v. Green*, 159 U.S. 651, 653 (1859)). Simply put, "a moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents." *Goldin v. Bartholow*, 166 F.3d 710, 718 (5th Cir. 1999).

As an initial matter, the Court does not address the parties' argument regarding mandamus. Menendez initially sought a writ of mandamus ordering the USPTO and its Commissioner to substitute Menendez as the sole owner and applicant in the Application (Dkt. #5 ¶ 39). However, on October 8, 2021, Menendez filed a stipulation dismissing his claims and the entire action as to the USPTO and its Commissioner, Drew Hirshfield (Dkt. #18). On October 12, 2021, the Court entered an order granting Menendez's stipulation (Dkt. #20). Thus, Menendez's request for a writ of mandamus is no longer an issue in this case.

Menendez also seeks a declaratory judgment from the Court that the First Assignment is a forgery (Dkt. #5 ¶ 29). The Court does not find the Second Assignment relevant to Menendez's claim that the First Assignment is a forgery, or how the Second Assignment would render that claim moot. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("A defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."). Thus, the Court turns to whether Menendez's claim for injunctive relief is moot.

### A. The Second Assignment Renders Menendez's Claim for Injunctive Relief Moot.

In his Amended Complaint, Menendez requested the Court require Hunter Douglas to transfer to Menendez all rights in the Hem Bar, including but not limited to, the right to obtain a

patent (Dkt. #5 ¶ 34). Hunter Douglas contends the Second Assignment already afforded Menendez the injunctive relief sought (Dk. #16 at p. 13). Menendez concedes Hunter Douglas' argument has merit (Dkt. #19 at p. 11).

The Fifth Circuit has stated, "we find it beyond dispute that a request for injunctive relief generally becomes moot upon the happening of the event sought to be enjoined." *Harris v. City of Hous.*, 151 F.3d 186, 189 (5th Cir. 1998); *see also Marilyn T., Inc. v. Evans*, 803 F.2d 1383, 1384 (5th Cir. 1986). Stated differently, once the action that the plaintiff sought to have enjoined has occurred, the case is mooted because "[n]o order of this court could affect the parties' rights with respect to the injunction[.]" *Honig v. Students of the Cal. Sch. for the Blind*, 471 U.S. 148, 149 (1985); *see also Seafarers Int'l Union of N. Am. v. Nat'l Marine Servs., Inc.*, 820 F.2d 148, 151–52 (5th Cir. 1987) (same). The Second Assignment restored the rights Menendez sought through his claim for injunctive relief. Due to the Second Assignment, Menendez's claim for injunctive relief is moot and should be dismissed for lack of subject-matter jurisdiction. *Marilyn T.*, 803 F.2d at 1385.

### B. Hunter Douglas' Arguments Regarding the Terms of the Employment Agreement are Not Appropriate for the Court's 12(b)(1) Analysis.

Hunter Douglas contends that, "[b]ecause the Employment Agreement automatically transferred rights in the Hem Bar to Hunter Douglas, there is no and could be no fraud, conversion, or violation of Section 12.002 of the Texas Civil Practice and Remedies Code" (Dkt. #16 at pp. 13–14).

After considering both the motion and the response, it is clear Hunter Douglas conflates the appropriate Rule 12(b)(1) and Rule 12(b)(6) analyses. "[W]hether the court lacks subject matter jurisdiction and whether the plaintiff fails to state a claim on which relief can be granted are distinct questions." *Emp. Ins. of Wausau v. Suwannee River Spa Lines, Inc.*, 866 F.2d 752, 759

8

(5th Cir. 1989). In other words, "courts should analyze their own authority to hear a case as a separate matter from whether that case involves a viable claim." *In re KSRP, Ltd.*, 809 F.3d 263, 267 (5th Cir. 2015). Thus, the plausibility and viability of Menendez's claims become relevant only upon a finding of subject matter jurisdiction.

In his amended complaint, Menendez pleaded:

> Subject matter jurisdiction over the claims against Hunter Douglas arises out of diversity of citizenship as set forth in 28 U.S.C. § 1332. Diversity is present because Plaintiff is a citizen of the State of Texas, and Hunter Douglas is a citizen of the Netherlands and the State of New York. The amount in controversy with respect to the patent rights affected by the fraudulent assignment far exceeds $75,000.

(Dkt. #5 ¶ 8). Hunter Douglas has not objected to the Court's jurisdiction under Section 1332(b). Furthermore, the Court finds diversity jurisdiction exists. *Vantage Drilling Co. v. Su*, 741 F.3d 535, 537 (5th Cir. 2014) ("Subject matter jurisdiction over a state claim in federal court under 28 U.S.C. § 1332(a) exists when the amount in controversy is satisfied and there is complete diversity of citizenship between the parties."). Thus, the Court finds Hunter Douglas' arguments without merit.

Hunter Douglas also attacks the Court's subject matter jurisdiction by arguing Menendez's "claims for damages fail under 12(b)(1) for lack of standing" (Dkt. #16 at p. 17). Thus, the Court now turns to the question of Menendez's standing.

### C. Menendez has Standing to Seek Redress from this Court.

Hunter Douglas argues Menendez's conversion and Section 12.002 claims should be dismissed because the Second Assignment eliminated any injury in fact Menendez may have suffered (Dkt. #16 at pp. 17–18). Menendez responds the Second Assignment has no bearing on the legality of the First Assignment, nor does it eliminate Menendez's damages resulting from Hunter Douglas' use of the Hem Bar between the First and Second Assignment (Dkt. #19 at p. 2).

A plaintiff has standing if he sufficiently alleges an injury in fact that is fairly traceable to the defendant's allegedly unlawful conduct and is likely to be redressed by a favorable decision. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006); *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992). Here, Menendez seeks damages arising from the three years in which Hunter Douglas acted "under color of ownership created by the fraudulent assignment" and sold products containing the Hem Bar (Dkt. #19 at p. 15). The Second Assignment is not relevant to whether Hunter Douglas converted Menendez's intellectual property rights or whether Hunter Douglas violated Section 12.002 when it presented the First Assignment to the USPTO in the Application. "'At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice' to establish standing." *Stallworth v. Bryant*, 936 F.3d 224, 230 (5th Cir. 2019) (quoting *Lujan*, 504 U.S. at 560). Thus, the Court finds Menendez has sufficiently alleged an injury in fact which a favorable decision from this Court could likely redress.

## II. Failure to State a Claim

Hunter Douglas also seeks dismissal for failure to state a claim (Dkt. #16 at p. 18). Menendez contends he pleaded sufficiently to state a claim, or in the alternative, seeks leave to amend (Dkt. #19 at pp. 17, 26).

### A. Menendez Failed to Plead Sufficient Facts to Support a Claim for Conversion.

Hunter Douglas contends that Menendez's claim for conversion of his intellectual property rights "lie[s] beyond the scope of Texas conversion law" and thus should be dismissed under Rule 12(b)(6) (Dkt. #16 at p. 23). Menendez responds his conversion claim is well-pleaded, and that his claim falls within an exception that permits a conversion claim for intangible property (Dkt. #19 at p. 24).

Under Texas law, conversion is the unauthorized and wrongful assumption and exercise of dominion and control over another's property, to the exclusion of or inconsistent with the owner's rights in the property. *See Amarillo Nat'l Bank v. Komatsu Zenoah America, Inc.*, 991 F.2d 273, 274 (5th Cir. 1993). A claim of conversion consists of the following: (1) plaintiff legally possessed the property or was entitled to it; (2) defendant wrongfully exercised dominion and control over the property, excluding plaintiff; (3) plaintiff demanded the property's return; and (4) defendant refused. *Arthur v. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009). Generally, when an "allegation involves only intellectual property rights . . . rather than rights regarding physical property . . . [it] is outside the scope of Texas conversion law, which concerns only physical property." *Beardmore v. Jacobson*, 131 F. Supp. 3d 656, 666 (S.D. Tex. 2015) (quoting *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (quoting *Waisath v. Lack's Stores*, 474 S.W.2d 444, 447 (Tex. 1971))). Menendez pleaded "Hunter Douglas converted Plaintiff's intellectual property rights in his Hem Bar invention" (Dkt. #5 ¶ 52). Because this allegation involves only intellectual property rights, it would appear Menendez's claim fails as a matter of law.

That said, Texas law recognizes an exception to the general rule that conversion claims only exist in the context of physical property "in cases where an underlying intangible right has been merged into a document and that document has been converted." *Express One Int'l v. Steinbeck*, 53 S.W.3d 895, 901 (5th Cir. 2001) (citing *Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 982 (S.D. Tex. 1997)). Pursuant to this limited merger exception, Texas courts have recognized a cause of action for conversion of a customer list, leases, and stock certificates. *Arquati v. Corradi United States*, No. 3:10-cv-0152-N, 2010 WL 11530860, at *5 (N.D. Tex. Dec. 29, 2010) (collecting cases).

Menendez argues his intangible intellectual property rights "merged into the prospective patent specifications and claims" in the Application (Dkt. #19 at p. 35). Menendez relies on the holding in *Ultravision Techs., LLC v. Lamar Advert. Co.*, 2:16-CV-374-JRG-RSP, 2017 WL 957722, at *2 (E.D. Tex. Feb. 21, 2017). In *Ultravision*, the plaintiff pleaded the merger exception in its conversion claim. *Id.* at *2. Specifically, the *Ultravision* plaintiff pleaded that defendant merged plaintiff's proprietary information and its invention into requests for proposal to vendors, as well as specifications and claims of various patents. *Id.* The court found it was plausible that the plaintiff's proprietary information was "effectively merged" into the specification and claims of the patents, and because the defendant owned those patents, the defendant converted plaintiff's intangible property. *Id.* at *10. The Court finds enough similarities between this case and *Ultravision* to find it plausible that Menendez falls within the merger exception.

However, Menendez failed to raise the merger exception until his response (Dkt. #19 at p. 24). The Court is limited to "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced in the complaint." *Lone Star Fund*, 594 F.3d at 387. Thus, Menendez has failed to state a claim for conversion that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Instead of dismissal though, the Court will permit Menendez to replead and assert the merger exception. Otherwise, his claim that Hunter Douglas converted his intellectual property fails as a matter of law.

**B. Menendez States a Plausible Claim for Violation of Section 12.002 of the Texas Civil Practice and Remedies Code.**

Hunter Douglas argues Menendez merely pleaded the bare elements of his Section 12.002 claim (Dkt. #16 at p. 21). Specifically, Hunter Douglas argues Menendez failed to include

allegations regarding the "*mens rea*" element of Section 12.002.  Menendez responds that his complaint meets the 12(b)(6) standard (Dkt. #19 at p. 23).

Section 12.002 of the Texas Civil Practice and Remedies Code generally prohibits the use of fraudulent documents to establish a lien or claim against property, and a breach of contract claim.  *Golden v. Wells Fargo Bank, N.A.*, 557 Fed. Appx. 323, 324–25 (5th Cir. 2014).  A claim under Section 12.002(a) has three elements: (1) defendant made, presented, or used a document with knowledge that it was a "fraudulent lien or claim against real or personal property or an interest in real or personal property," (2) defendant intended that the document be given legal effect, and (3) defendant intended to cause the plaintiff physical injury, financial injury, or mental anguish.  *Henning v. OneWest Bank FSB*, 405 S.W.3d 950, 964 (Tex. App.—Dallas 2013, no pet.) (quoting TEX. CIV. PRAC. & REM. CODE § 12.002(a)).  Having reviewed the amended complaint, the Court finds Menendez has sufficiently pleaded facts which support his claim for violation of Section 12.002.

Absent a claim which is obviously insufficient, a court should not grant a Rule 12(b)(6) motion to dismiss, thereby denying Menendez the opportunity to develop facts to support his claims.  Further argument regarding Hunter Douglas' knowledge of the allegedly fraudulent nature of the Assignment is best saved for a later stage of litigation when more of the factual background has been developed through the discovery process.  Accordingly, Menendez's allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss.

**C. Menendez Sufficiently Pleaded an Underlying Claim to Support His Claim for Declaratory Judgment.**

Menendez seeks a declaration that the First Assignment is a forgery (Dkt. #5 ¶ 29).  Hunter Douglas argues Menendez's complaint does not state sufficient facts to support his allegations of

fraud in his claims for injunctive relief, mandamus, and declaratory relief (Dkt. #16 at p. 18).[2] Specifically, Hunter Douglas argues Menendez's complaint may not support a fraud claim. Menendez responds Hunter Douglas has not "expressly challenge[d]" his claim for declaratory relief, but nevertheless, he has sufficiently pleaded his claim for declaratory judgment (Dkt. #19 at p. 19).

"In a declaratory judgment action, the parties litigate the underlying claim, and the declaratory judgment is merely a form of relief that the court may grant." *Val-Com Acquisitions Trust v. CitiMortgage, Inc.*, 421 F. App'x 398, 400 (5th Cir. 2011) (citing *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods,* 915 F.2d 167, 171 (5th Cir. 1990)). Without an underlying cause of action, Menendez is not entitled to any declaratory relief. *See Endsley v. Green Tree Servicing LLC*, No. 5:15-CV-151-RWS-CMC, 2017 WL 1856281, at *11 (E.D. Tex. Feb. 8, 2017) ("Entitlement to declaratory relief is dependent upon the plaintiff first pleading a viable underlying cause of action."). Where all the substantive, underlying claims are subject to dismissal, a claim for declaratory relief cannot survive. *Walls v. JPMorgan Chase Bank, NA*, No. 4:13-cv-402, 2013 WL 5782999, at *4 (E.D. Tex. Oct. 25, 2013). Thus, Hunter Douglas appears to argue that the claim for declaratory relief may not proceed because none of the underlying causes of action may proceed. However, the Court already determined Menendez has stated a plausible claim for violation of Section 12.002 and may have a claim for conversion should he elect to proceed with amending its complaint to assert the merger exception. Moreover, Rule 12(b)(6) addresses a plaintiff's failure to state a claim, not specific types of relief.

---

[2] Menendez's Second Claim is for injunctive relief (Dkt. #5 ¶¶ 30–34), which this Court has already dismissed pursuant to Rule 12(b)(1). *Supra* pp. 7–8. The Third Claim is for mandamus (Dkt. #5 ¶¶ 35–39), which the Court has previously dismissed pursuant to Menendez's stipulation (Dkt. #20). Therefore, the Court will only address arguments about fraud as it pertains to Menendez's request for declaratory relief.

*Chase v. Hodge*, No. 1:20-cv-175-RP, 2021 WL 1948470, at *11 (W.D. Tex. May 14, 2021). Thus, dismissal of Menendez's request for declaratory relief is not warranted.

### III.    Dismissal Under Rule 41(a)(1)

In the alternative, Menendez requested the Court dismiss his claims against Hunter Douglas without prejudice pursuant to Rule 41(a)(1) (Dkt. #19 at p. 26). Hunter Douglas requests dismissal with prejudice, although it does not provide the Court with a legal basis for such a disposition (Dkt. #22 at p. 10).

A plaintiff has an absolute right to voluntarily dismiss an action without a court order if the plaintiff files "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment" or "a stipulation of dismissal signed by all parties who have appeared." FED. R. CIV. P. 41(a)(1)(A)(i)–(ii); *see Carter v. United States*, 547 F.2d 258, 259 (5th Cir. 1977). In the absence of such stipulation or the opposing party serves either an answer or motion for summary judgment, a case "may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." FED. R. CIV. P. 41(a)(2); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 394 (1990). "The primary purpose of Rule 41(a)(2) is to 'prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions.'" *True Believers Ink 2, Corp. v. Russell Brands*, LLC, No. 4:18-CV-00432, 2019 WL 4039888, at *2 (E.D. Tex. Aug. 27, 2019) (quoting *Manshack v. Sw. Elec. Power Co.*, 915 F.2d 172, 174 (5th Cir. 1990)).

Menendez's request for dismissal—contained in his response—was made October 8, 2021. Hunter Douglas has not filed an answer or motion for summary judgment. A motion to dismiss is not an answer for purposes of Rule 41(a)(1). *See Carter v. United States*, 547 F.2d 258, 259 (5th Cir. 1977). Thus, Menendez's request is timely. However, Rule 41(a) states a plaintiff may

voluntarily dismiss an action without prejudice "by filing a notice of dismissal." FED. R. CIV. P. 41(a)(1). Menendez's request for dismissal under Rule 41(a)(1) was made for the first time in his response to Hunter Douglas's motion to dismiss, rather than in a notice of dismissal as the rule requires. Accordingly, if Mendez desires to pursue a voluntary dismissal of his claims without prejudice, Menendez must file a proper notice of dismissal.

## CONCLUSION

It is therefore **ORDERED** that Defendant Hunter Douglas, Inc.'s Motion to Dismiss (Dkt. #16) is **GRANTED in part and DENIED in part.**

Plaintiff Victor Menendez shall have fourteen (14) days from entry of this Order to replead his claim for conversion.

**IT IS SO ORDERED.**

**SIGNED this 16th day of March, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE